**Electronically Filed**
**Intermediate Court of Appeals**
**28904**
**23-FEB-2011**
**07:23 AM**

NO. 28904

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
DANIEL TAYLOR, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 07-1-0253)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

Defendant-Appellant Daniel Taylor (Taylor) appeals from the "Order Granting Ex Parte Motion to Certify Order Denying Defendant's Motion to Dismiss Indictment and Second Motion to Dismiss for Interlocutory Appeal Pursuant to H.R.S. § 641-17" filed on December 13, 2007 in the Circuit Court of the Third Circuit[1] (circuit court).

On appeal, Taylor contends the circuit court erred in denying (1) his Hawaii Revised Statutes (HRS) § 701-112 (1993) claim; (2) his double jeopardy claim under the Fifth and Fourteenth Amendments to the United Statutes Constitution; (3) his double jeopardy claim under article I, section 10 of the Hawai'i Constitution; and (4) his claim that, as a matter of law, the artifacts were not "property of another" for purposes of

---

[1]  The Honorable Glenn S. Hara presided.

HRS §§ 708-800 (1993), 708-830(1) (1993), and 708-830.5(1)(a) (1993) under theories that the State of Hawai'i (State) had presented to the grand jury and the circuit court, and due process thus required dismissal under article I, section 5 of the Hawai'i Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

## I.  BACKGROUND

On March 24, 2006, the United States of America (the Government) charged Taylor by Information with:

Count 1:  Conspiracy (18 United States Code (U.S.C.) § 371) to traffic in Native American cultural items, namely "to sell, use for profit, and transport for sale and profit Native American cultural items obtained in violation of the Native American Graves Protection and Repatriation Act" (NAGPRA), in violation of 18 U.S.C. § 1170(b), "to wit:  Native Hawaiian artifacts that had been repatriated and re-buried at Kanupa Cave located on the island of Hawaii," occurring from at least June 16, 2004 through August 2004, and specifying the "ways and means of the conspiracy" and also reflecting certain "overt acts"; and

Count 2:  Trafficking in Native American cultural items in violation of NAGPRA, "to wit: Native Hawaiian artifacts that had been repatriated and re-buried at Kanupa Cave located on the island of Hawaii," occurring on or about June 17, 2004 -- all in violation of 18 U.S.C. § 1170(b) and 2 [sic].

Pursuant to a Memorandum of Plea Agreement (Plea Agreement), Taylor entered a guilty plea on March 24, 2006 to Count 1, in exchange for the Government agreeing to dismiss Count 2 after sentencing and not seek additional charges related to the taking and selling of Native American cultural items from about June 2004 through August 2004.  The Plea Agreement incorporated an outline of facts relating to the charge.  United States District Court for the District of Hawai'i (District Court)

Magistrate Judge Barry M. Kurren found Taylor guilty. On June 12, 2007, then-Magistrate Judge Leslie Kobayashi entered a judgment in which the District Court convicted and sentenced Taylor to, inter alia, an eleven-month prison term.

According to the State, it received a copy of the Government's redacted investigative file on October 16, 2006. The State Attorney General's office Special Agent Kaikana (Agent Kaikana) interviewed three additional witnesses, whose statements were not included in the Government's file. Agent Kaikana also interviewed Steve Rosen, who provided an appraisal of the artifacts involved in this case.

On May 23, 2007, the State presented its case of Theft in the First Degree against Taylor to the grand jury. The evidence included the following. Some of the Hawaiian artifacts in the J.S. Emerson Collection were obtained from Kanupa Cave by Joseph Swift Emerson (Emerson), and Emerson sold part of the artifacts to the Bishop Museum and the Peabody Museum. Some of the artifacts were repatriated from the Bishop and Peabody Museums and reburied at Kanupa Cave. It was documented that the State, Hui Malama, Office of Hawaiian Affairs (OHA), and Bishop Museum brought the artifacts back to Kanupa for repatriation and reburial.

Taylor was a suspect in an investigation of theft of Hawaiian artifacts from Kanupa Cave. Taylor's statement in his Plea Agreement included that he went to Kanupa Cave, removed the rock blocking the cave entrance, went inside, saw a lot of artifacts in woven lauhala baskets and wrapped in black cloth, took about 157 artifacts from the cave, and tried to sell the artifacts. Some of the artifacts had Emerson Collection labels on them, and Taylor acknowledged in the Plea Agreement that he saw Emerson tags on the artifacts; knew the artifacts belonged to the Emerson Collection; and prior to selling the artifacts, he

took off the Emerson tags. Taylor stated that he attempted to sell or did sell some of the artifacts. As a result of the execution of a search warrant at Taylor's residence, two pieces of a sled runner that had been part of the Peabody Museum's collection of artifacts were recovered.

On May 24, 2007, the State filed an indictment, charging Taylor with Theft in the First Degree, in violation of HRS §§ 708-830(1) and 708-830.5(1)(a).

On July 24, 2007, Taylor moved to dismiss the indictment pursuant to HRS §§ 701-110(3) (1993) and 701-112 and the Hawaiʻi Constitution for violations of (1) double jeopardy in the State prosecution of an offense for which he had been convicted in federal court and (2) due process under the Hawaiʻi and United States Constitutions where "property of another" was not established as required under HRS § 708-800 and where the control did not constitute theft under HRS §§ 708-830(1) and 708-830.5(1)(a) (First Motion to Dismiss). On August 24, 2007, the State opposed the motion.

On August 30, 2007, the circuit court held a hearing on the First Motion to Dismiss, ordered the parties to submit supplemental memoranda, and stated that it would render its decision in writing.

On September 13, 2007, Taylor filed a Second Motion to Dismiss (Second Motion to Dismiss), arguing that a conviction for the Theft in the First Degree charge would violate the rule under State v. Modica, 58 Haw. 249, 250-51, 567 P.2d 420, 421-22 (1977), where the first degree theft class B felony offense is also punishable as a petty misdemeanor under HRS §§ 6D-2(a) (2009 Repl.) and 6D-12 (2009 Repl.). In a September 12, 2007 supplemental memorandum in opposition to the First Motion to Dismiss, the State argued that the stolen artifacts were the property of the State, referencing HRS § 6E-7 (2009 Repl.) (State title to historic property) and § 6E-2 (2009 Repl.) (definition of historic property).

On November 14, 2007, the circuit court entered its "Findings of Facts, Conclusions of Law and Order Denying Motion to Dismiss Indictment [First Motion to Dismiss] and Second Motion to Dismiss" (FOF/COL/Order). On December 13, 2007, Taylor obtained an order from the circuit court certifying an interlocutory appeal from the FOF/COL/Order. Taylor filed his notice of appeal on December 14, 2007.

## II. STANDARDS OF REVIEW

### A. MOTION TO DISMISS INDICTMENT

A denial of a motion to dismiss an indictment based upon a statute regarding limitations on prosecution is reviewed for abuse of discretion. State v. Akau, 118 Hawai'i 44, 51, 185 P.3d 229, 236 (2008).

### B. INTERPRETATION OF A STATUTE

Interpretation of a statute is reviewed de novo. Id.

### C. MOTION TO DISMISS

A motion to dismiss based upon constitutional double jeopardy is reviewed de novo under the right/wrong standard. Whiting v. State, 88 Hawai'i 356, 358, 966 P.2d 1082, 1084 (1998); State v. Ferm, 94 Hawai'i 17, 22, 7 P.3d 193, 198 (App. 2000); State v. Hoang, 86 Hawai'i 48, 50-51, 947 P.2d 360, 362-63 (1997) (grant of motion to dismiss a count of the indictment for violation of due process and equal protection based upon the Modica rule was reviewed de novo).

### D. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pretrial findings of fact are reviewed under the clearly erroneous standard. State v. Locquiao, 100 Hawai'i 195, 203, 58 P.3d 1242, 1250 (2002). Pretrial conclusions of law are reviewed under the de novo standard. Id.

## III. DISCUSSION

### A. FIRST MOTION TO DISMISS PURSUANT TO HRS § 701-112

Taylor contends the circuit court erred when it denied the HRS § 701-112 claim he raised in his First Motion to Dismiss.

He argues that the circuit court wrongly concluded that the charged state offense of Theft in the First Degree required proof of facts that the federal offense of conspiracy to traffic in Native Hawaiian artifacts did not.

HRS § 701-112 provides, in relevant part:

§701-112 **Former prosecution in another jurisdiction; when a bar.** When behavior constitutes an offense within the concurrent jurisdiction of this State and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this State under any of the following circumstances:

(1)     The first prosecution resulted in . . . a conviction as defined in section 701-110(3), and the subsequent prosecution is based on the same conduct, unless:

(a)     The offense for which the defendant is subsequently prosecuted requires proof of a fact not required by the former offense and the law defining each of the offenses is intended to prevent a substantially different harm or evil[.]

(Emphasis added.)

In the instant case, Theft in the First Degree requires proof of the facts that the item taken had a value of over $20,000 and the person intended to deprive the owner of the property. HRS § 708-830.5(1)(a) & 708-830(1). These facts were not required for the federal conspiracy and trafficking offenses.

The federal conspiracy and trafficking offenses appear to be intended to prevent substantially different harms or evils than the state theft offense. With regard to the purpose of the conspiracy statute:

Our decisions have identified two independent values served by the law of conspiracy. The first is protection of society from the dangers of concerted criminal activity, *Callanan v. United States*, [364 U.S. 587, 593, 81 S. Ct. 321, 325 (1961)]; *Dennis v. United States*, 341 U.S. 494, 573-574, 71 S. Ct. 857, 899-900, 95 L. Ed. 1137 (1951) (Jackson, J., concurring).

The second aspect is that conspiracy is an inchoate crime. This is to say, that, although the law generally makes criminal only antisocial conduct, at some point in the continuum between preparation and consummation, the likelihood of a commission of an act is sufficiently great and the criminal intent sufficiently well formed to justify the intervention of the criminal law. *See Note, Developments in the Law-Criminal Conspiracy*, 72 Harv. L.

> Rev., at 923-925.  The law of conspiracy identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is committed.  *United States v. Bayer*, 331 U.S. 532, 542, 67 S. Ct. 1394, 1399, 91 L. Ed. 1654 (1947). Criminal intent has crystallized, and the likelihood of actual, fulfilled commission warrants preventive action.

United States v. Feola, 420 U.S. 671, 693-94, 95 S. Ct. 1255, 1268 (1975).  With regard to the purpose of the trafficking offense:

> The primary purpose of NAGPRA, which is to assist Native Americans in the repatriation of items that the tribes consider sacred, differs from that of the Antiquities Act, which is directed against the unlawful taking or destruction of property.  Because the intended purposes of the two acts differ significantly, they should not be treated similarly for sentencing calculations.

United States v. Corrow, 941 F. Supp. 1553, 1567 (D.N.M. 1996), aff'd 119 F.3d 796 (10th Cir. 1997), cert. denied 522 U.S. 1133 (1998).

Thus, the primary purposes of the conspiracy statute and NAGPRA are different from the primary purpose of the state theft statute, which is concerned with "protecting owners from the deprivation of their property."  State v. Freeman, 70 Haw. 434, 439, 774 P.2d 888, 892 (1989) (see Commentary to HRS §§ 708-830 to -833).  Furthermore, as discussed previously, NAGPRA provided a savings provision that explicitly expressed no intent to limit the application of any state or federal law pertaining to theft.  H.R. Rep. 101-877 (1990), reprinted in 1990 U.S.C.C.A.N. 4367, 1990 WL 200613.

Accordingly, the circuit court did not err in its conclusions and did not abuse its discretion in denying the First Motion to Dismiss in which the HRS § 701-112 claim was made.

B.   DOUBLE JEOPARDY UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

Taylor contends the circuit court erred when it denied his double jeopardy claim made pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

7

The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, states in relevant part: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

> The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the "peace and dignity" of two sovereigns by breaking the laws of each, he has committed two distinct "offences." *United States v. Lanza*, 260 U.S. 377, 382, 43 S. Ct. 141, 67 L. Ed. 314 (1922). As the Court explained in *Moore v. Illinois*, 14 How. 13, 19, 14 L. Ed. 306 (1852), "[a]n offence, in its legal signification, means the transgression of a law." Consequently, when the same act transgresses the laws of two sovereigns, "it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable." *Id.*, at 20.

> In applying the dual sovereignty doctrine, then, the crucial determination is whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns. This determination turns on whether the two entities draw their authority to punish the offender from distinct sources of power. *See, e.g., United States v. Wheeler*, 435 U.S. 313, 320, 98 S. Ct. 1079, 1084, 55 L. Ed. 2d 303 (1978); *Waller v. Florida*, 397 U.S. 387, 393, 90 S. Ct. 1184, 1187, 25 L. Ed. 2d 435 (1970); *Puerto Rico v. Shell Co.*, 302 U.S. 253, 264-265, 58 S. Ct. 167, 172-73, 82 L. Ed. 235 (1937); *Lanza, supra*, 260 U.S., at 382, 43 S. Ct., at 142; *Grafton v. United States*, 206 U.S. 333, 354-355, 27 S. Ct. 749, 755, 51 L. Ed. 1084 (1907). Thus, the Court has uniformly held that the States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own "inherent sovereignty," not from the Federal Government. *Wheeler, supra*, at 320, n.14, 98 S. Ct., at 1084, n.14. *See Abbate v. United States*, 359 U.S. 187, 193-194, 79 S. Ct. 666, 669-70, 3 L. Ed. 2d 729 (1959) (collecting cases); *Lanza, supra*. As stated in *Lanza, supra*, 260 U.S., at 382, 43 S. Ct., at 142:

>> "[E]ach government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

>> "It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each."

> *See also Bartkus v. Illinois*, 359 U.S. 121, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959); *Westfall v. United States*, 274 U.S. 256, 258, 47 S. Ct. 629, 629, 71 L. Ed. 1036 (1927) (Holmes, J.) (the proposition that the State and Federal Governments may punish the same conduct "is too plain to need more than statement").

Heath v. Alabama, 474 U.S. 82, 88-89, 106 S. Ct. 433, 437-38 (1985). Under the United States Constitution, dual sovereignty exists, and because the same conduct may be punished by the Government as well as by the State, Taylor may be prosecuted for the state theft offense unless an exception to dual sovereignty applies.

> [The] separate-sovereigns rule has one important exception, however. In *Bartkus*, the Supreme Court suggested that the Double Jeopardy Clause might proscribe consecutive state and federal prosecutions in cases where federal authorities commandeer a state's prosecutorial machinery, converting the state prosecution into "a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." 359 U.S. at 123-24, 79 S. Ct. 676. Although the Court explored this narrow exception in dicta, we have adopted the "*Bartkus* exception" as the controlling law of this circuit. *See, e.g., [United States v. Figueroa-Soto*, 938 F.2d 1015, 1019 (9th Cir. 1991)]; *United States v. Bernhardt*, 831 F.2d 181, 182-83 (9th Cir. 1987).

United States v. Zone, 403 F.3d 1101, 1104 (9th Cir. 2005). In United States v. Figueroa-Soto, 938 F.2d 1015, 1019 (9th Cir. 1991), evidence in support of the Bartkus exception included proof that the Arizona prosecution had been initiated at the request of the federal authorities, the federal authorities had assisted the state in the investigation, evidence had been provided to the state by federal authorities, federal prosecutors had used their sentencing power to influence a witness in the state case, and the two actions had been prosecuted by the same attorney. The United States Court of Appeals for the Ninth Circuit explained:

> As *Bartkus* makes plain, there may be very close coordination in the prosecutions, in the employment of agents of one sovereign to help the other sovereign in its prosecution, and in the timing of the court proceedings so that the maximum assistance is mutually rendered by the sovereigns. None of this close collaboration amounts to one government being the other's "tool" or providing a "sham" or "cover." Collaboration between state and federal authorities is "the conventional practice." No constitutional barrier exists to this norm of cooperative effort.

Figueroa-Soto, 938 F.2d at 1020.

Accordingly, Taylor's arguments that the State's Attorney General stood "side by side" with the U.S. Attorney when

9

the federal prosecution and plea were publicized and the State's presentation to the grand jury was based upon the investigation and evidence of the federal prosecution without independent or joint State investigation, when viewed in conjunction with the State's assertion that it interviewed other witnesses whose statements were not included within the Government's file and obtained an appraisal of the artifacts from Steve Rosen, does not amount to one government being a tool or providing a sham or cover for another. The circuit court, thus, was not wrong in concluding that the dual sovereignty doctrine applied and did not clearly err in finding that Taylor failed to show the two prosecutions were so intertwined as to warrant not applying the doctrine.

The federal double jeopardy bar to successive prosecutions of the "same" offense as set forth in Blockburger v. United States, 284 U.S. 299 (1932), applies to successive prosecutions by a single sovereign and not to different sovereigns that could apply the dual sovereignty principle.

> Successive prosecutions are barred by the Fifth Amendment only if the two offenses for which the defendant is prosecuted are the "same" for double jeopardy purposes. Respondent does not contravene petitioner's contention that the offenses of "murder during a kidnaping" and "malice murder," as construed by the courts of Alabama and Georgia respectively, may be considered greater and lesser offenses and, thus, the "same" offense under Brown v. Ohio, [432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)], absent operation of the dual sovereignty principle. See id., at 169; Illinois v. Vitale, 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980). We therefore assume, arguendo, that, had these offenses arisen under the laws of one State and had petitioner been separately prosecuted for both offenses in that State, the second conviction would have been barred by the Double Jeopardy Clause.

Heath, 474 U.S. at 87-88 (emphases added). As such, in the instant case, because alleged successive prosecutions involved different sovereigns and the dual sovereignty principle applies under the United States Constitution, a determination that the federal and state offenses are the same would not constitute double jeopardy or bar the State prosecution.

C.   DOUBLE JEOPARDY UNDER ARTICLE I, SECTION 10 OF THE HAWAIʻI CONSTITUTION

Taylor contends the circuit court erred when it denied his double jeopardy claim made pursuant to article I, section 10 of the Hawaiʻi Constitution.

Article I, section 10 of the Hawaiʻi Constitution provides, in relevant part:  "nor shall any person be subject for the same offense to be twice put in jeopardy."

However, both the federal and state governments can prosecute the same acts.  Heath, 474 U.S. at 88-89, 106 S. Ct. at 437.  Taylor cites to no authority to support his position that article I, section 10, rejects the dual sovereignty doctrine, and we find no such authority.  Additionally, HRS § 701-112 does not bar a subsequent State prosecution to a federal prosecution when the subsequent prosecution required the proof of a fact not required by the federal offense and the State law defining the offense is intended to prevent a substantially different harm or evil than the federal offense -- as is the case here.

Furthermore, it does not appear that the State prosecution was a sham or cover for the federal prosecution based on the State's Attorney General's standing "side by side" with the U.S. Attorney when the federal prosecution and plea were publicized and the State's presentation to the grand jury of the federal investigation and evidence without independent or joint State investigation, when viewed in conjunction with the State's assertion that it interviewed other witnesses whose statements were not included within the Government's file and obtained an appraisal of the artifacts from Steve Rosen, in light of Figueroa-Soto, 938 F.2d at 1019-20; Zone, 403 F.3d at 1104; Bartkus v. Illinois, 359 U.S. 121, 122-24, 79 S. Ct. 676, 677-78 (1959).  The circuit court did not clearly err in finding that Taylor failed to demonstrate that the State prosecution was a sham or cover for the federal prosecution.

D.    SUFFICIENCY OF THE THEFT CHARGE AS "PROPERTY OF ANOTHER" UNDER HRS §§ 708-800, 708-830(1), AND 708-830.5(1)(a)

Taylor contends the circuit court erred in denying his claim that, as a matter of law, the artifacts were not "property of another" for purposes of HRS §§ 708-800, 708-830(1), and 708-830.5(1)(a) under theories that the State had presented to the grand jury and the circuit court, and due process thus required dismissal under article I, section 5 of the Hawaiʻi Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

HRS § 708-830(1) provides:

> §708-830  **Theft.**  A person commits theft if the person does any of the following:
>
> (1)    Obtains or exerts unauthorized control over property.  A person obtains, or exerts control over, the property of another with intent to deprive the other of the property.

HRS § 708-800 (1993) defines "unauthorized control over property" as "control over property of another which is not authorized by the owner."  HRS § 708-800 defines "property of another" as "property which any person, other then the defendant, has possession of or any other interest in, even though that possession or interest is unlawful."  HRS § 708-830.5(1)(a) defines Theft in the First Degree as follows:

> §708-830.5  **Theft in the First Degree.**  (1) A person commits the offense of theft in the first degree if the person commits theft:
>
> (a)    Of property or services, the value of which exceeds $20,000[.]

The instant indictment charged, in pertinent part:

> On or about the 17th day of June, 2004, in the County of Hawaii, State of Hawaii, DANIEL TAYLOR, did obtain or exert unauthorized control over the property of another, to wit:  artifacts from Kanupa Cave, having a value which exceeds Twenty Thousand Dollars ($20,000.00), with intent to deprive the other of the property, thereby committing the offense of Theft in the First Degree in violation of Sections 708-830(1) and 708-830.5(1)(a) of the Hawaii Revised Statutes.

In State v. Nases, 65 Haw. 217, 649 P.2d 1138 (1982), involving theft of a calculator, Nases argued that a fatal flaw existed between the charge (alleging that the calculator was the property of Setsuko Yokoyama and Setsuko Yokoyama doing business as Kalakaua Kleaners) and the proof presented at trial (the calculator was actually the property of Kalakaua Kleaners, a corporation). Id. at 217-18, 649 P.2d at 1139. The Hawai'i Supreme Court stated:

> It has long been settled that where the offense is obtaining control over the property of another, proof that the property was the property of another is all that is necessary and the naming of the person owning the property in the indictment is surplusage. *State v. Riddle*, 245 Mo. 451, 150 S.W. 1044 (1912); *State v. Simpson*, 32 Nev. 138, 104 P. 244 (1909); and *Commonwealth v. Buckley*, 148 Mass. 27, 18 N.E. 577 (1888). *Compare State v. Peters*, 44 Haw. 1, 352 P.2d 329 (1959). It is undisputed that the calculator did not belong to appellant but was the property of another. The particular ownership of the property in question was not an essential element in proving the crime and there is no fatal variance between the charge and the proof.

Id. at 218, 649 P.2d at 1139-40 (emphasis added).

Additionally, where a statute only requires proof that the defendant was not the owner of the property taken, "an averment and a showing that a possessory or other property interest in the thing stolen is in someone other than the thief and proof that the thief knew that he had no right to the property taken are sufficient." Commonwealth v. Souza, 397 Mass. 236, 238, 490 N.E.2d 1173, 1175 (1986) (internal quotation marks, citation, and brackets omitted).

Evidence presented to the grand jury to secure the indictment of Taylor included the following. The artifacts of the J.S. Emerson Collection were obtained from Kanupa Cave by Joseph Swift Emerson and some of those artifacts were sold by him to the Bishop and Peabody Museums. It was documented that the State, Hui Malama, OHA, and Bishop Museum brought some of the museums' artifacts back to Kanupa for repatriation and reburial. Taylor was a suspect in an investigation of theft of Hawaiian artifacts from Kanupa Cave. In the federal prosecution, Taylor

entered into a Plea Agreement, and Taylor's statement included that he went to Kanupa Cave, removed the rock blocking the cave entrance, saw a lot of artifacts in woven lauhala baskets and wrapped in black cloth, took about 157 artifacts from the cave and tried to sell them, and some of the items had Emerson Collection labels on them. Taylor acknowledged in his Plea Agreement that he knew the items belonged to the Emerson Collection, he saw Emerson tags on the items, and he removed the Emerson tags. Taylor's statement also included that he attempted to sell or did sell some of the items. As a result of the execution of a search warrant at Taylor's residence, 2 pieces of a sled runner from the Peabody Museum's collection of artifacts were recovered.

From the foregoing facts, consistent with <u>Nases</u>, it appears clear that the artifacts did not belong to Taylor in light of evidence that the artifacts once were possessed by Emerson and the museums and that the State, Hui Malama, OHA, and Bishop Museum participated in the repatriation and reburial at Kanupa Cave. The identity of the actual owner of the artifacts is not required, and the evidence on appeal reveals the previous possession of the artifacts by the Emerson Collection, its sale of the artifacts to the Bishop and Peabody Museums, and the involvement by the State and other entities in the repatriation of the artifacts from the museums and reburial in Kanupa Cave. Irrespective of the State's later assertion that it owned the artifacts, specification of the actual owner of the property for purposes of this theft charge is not required and only evidence that the property was not that of Taylor is required. The issue of field or conflict preemption in the State's asserted claim to ownership of the repatriated artifacts does not appear to be necessary and we decline to discuss it. Consequently, the circuit court did not wrongly conclude that <u>Nases</u> sufficed to deny Taylor's motion to dismiss the charge.

## IV.   CONCLUSION

The "Order Granting Ex Parte Motion to Certify Order Denying Defendant's Motion to Dismiss Indictment and Second Motion to Dismiss for Interlocutory Appeal Pursuant to H.R.S. § 641-17" filed on December 13, 2007 in the Circuit Court of the Third Circuit is affirmed.

DATED:   Honolulu, Hawai‘i, February 23, 2011.

On the briefs:

Todd Eddins
for Defendant-Appellant.

Dorothy Sellers,
Solicitor General,
Kimberly Tsumoto Guidry,
Deputy Solicitor General,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge